UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO. 0:23-61259-CIV-SCOLA/SANCHEZ

SHM LMC, LLC d/b/a LAUDERDALE
MARINE CENTER,

    Plaintiff,

v.

M/Y *TRIUMPHANT LADY*, a 1984 model 46.97-meter motor yacht built by Sterling Yachts marked with Hull Identification Number 701, her engines, tackle, furniture, furnishings, personal watercraft, tenders, and appurtenances, *in rem*,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR DEFAULT FINAL JUDGMENT**

This matter is before the Court on the Motion for Default Final Judgment against Defendant M/Y *Triumphant Lady* with Supporting Memorandum of Law filed by the Plaintiff, SHM LMC, LLC d/b/a "Lauderdale Marine Center." ECF No. 21. The Honorable Robert N. Scola, United States District Judge, referred Plaintiff's motion to the undersigned for a report and recommendation. ECF No. 23. No response to the Plaintiff's Amended Complaint, ECF No. 17, or to Plaintiff's Motion for Default Final Judgment has been filed, and the deadlines to do so have passed. After careful consideration of the record, the Plaintiff's Motion and supporting declaration, and the relevant authority, the undersigned **RESPECTFULLY RECOMMENDS** that Plaintiff's Motion for Default Final Judgment, ECF No. 21, be **GRANTED IN PART AND DENIED IN PART**.

## I.     BACKGROUND[1]

This is an action to foreclose a maritime lien against Defendant M/Y *Triumphant Lady*, a 1984 model 46.97-meter motor yacht built by Sterling Yachts, marked with Hull Identification Number 701, her engines, tackle, furniture, furnishings, personal watercraft, tenders, and appurtenances (the "Vessel"). ECF No. 17 at ¶¶ 11-12.

According to the Amended Complaint, on or about May 21, 2018, an authorized representative for the Vessel's owner and Plaintiff entered into a "Boat Handling, Dockage & Storage Agreement" to procure "dockage, utilities, and boat handling services," or *necessaries*, for the Vessel. *Id.* at ¶ 16. The Agreement is attached to the Amended Complaint as Exhibit 1. ECF No. 17-1. The Plaintiff provided statements and invoices to the Vessel owner's agent/attorney, who indicated the Plaintiff would be paid. ECF No. 17 at ¶ 18. When the fees were not paid, the Plaintiff initiated this action, initially seeking to recover $324,155.97 in necessaries. *Id.* at ¶ 19. By September, the amount owed to the Plaintiff had grown to $409,502.63. *Id.* at ¶ 22.

On September 7, 2023, the Vessel was seized by the U.S. Marshals Service, which subsequently turned the Vessel over to the Plaintiff, who was designated as the substitute custodian pursuant to the Court's Order Appointing Substitute Custodian, ECF No. 12. ECF No. 17 at ¶ 23. The Plaintiff gave proper notice of the *in rem* action and the seizure to the Vessel's owner and by publication in the local Daily Business Review, as required by Supplemental and Local Admiralty Rule C(4). ECF No. 21 at ¶¶ 3-4; ECF Nos. 14, 18. The Plaintiff confirmed with the Vessel owner's agent/attorney that actual notice of both the action and the arrest had been received. ECF No. 17 at ¶ 27. Asserting that the time for other entities to appear and file a claim or responsive

---

[1] The following facts are admitted as a result of the Defendant's default. *See, e.g.*, *Amguard Ins. Co. v. Super Winn Nail Spa, Inc.*, No. 23-61304, 2024 WL 996444, at *1 (S.D. Fla. Mar. 5, 2024); Section II *infra*.

pleading on behalf of the Vessel had passed following the Plaintiff's publication of notice, the Plaintiff sought and obtained the Clerk's entry of default. ECF No. 19, 20. Plaintiff thereafter filed the instant motion for default final judgment. ECF No. 21.

On October 23, 2023, the Vessel's owner paid $367,386.85 of the unpaid balance to the Plaintiff, which left a remaining balance of $42,115.78. ECF No. 21 at ¶ 10; ECF No. 21-2 at ¶¶ 6-7. Once the Vessel was seized by the Marshals and turned over to the Plaintiff as substitute custodian on September 7, 2023, the services provided by the Plaintiff to the Vessel changed from being classified as *necessaries* to *custodia legis* services, and the fees continued to accumulate. Between September 7, 2023, and February 1, 2024, the Plaintiff claims *custodia legis* fees in the amount of $253,859.73. ECF No. 21 at ¶ 11. Since February 2, 2024, the *custodia legis* fees have continued to accumulate at a rate of $1,172.14 per day. *Id.* at ¶ 13. Plaintiff also seeks pre-judgment interest. *Id.* at ¶¶ 34-37.

## II.   LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a); *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002). The effect of a clerk's default is that all of the plaintiff's well-pled allegations are deemed admitted. *See Amguard Ins. Co. v. Super Winn Nail Spa, Inc.*, No. 23-61304, 2024 WL 996444, at *1 (S.D. Fla. Mar. 5, 2024) (citing *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987)); *see also Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (defaulted defendant deemed to admit well-pled allegations, but "not held to admit facts that are not well-pleaded or to admit conclusions of law").

Only the well-pled allegations are admitted because "entry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered, with the

3

standard for 'a sufficient basis' for the judgment being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Singleton v. Dean*, 611 F. App'x 671, 671 (11th Cir. 2015) ("The complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, which is met when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Certain Underwriters at Lloyd's London Subscribing to Policy BRT3A000415-02 v. A.M.A. Consulting & Constr. Servs.*, No. 21-cv-20979, 2022 WL 542893 (S.D. Fla. Feb. 7, 2022), *report and recommendation adopted*, 2022 WL 539183 (S.D. Fla. Feb. 22, 2022). Therefore, before entering a default judgment, a court must ensure that the well-pled allegations in the complaint state a substantive cause of action and provide a sufficient basis for the particular relief sought. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). If the admitted facts are sufficient to establish liability, then the Court must ascertain the appropriate amount of damages. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. Where all the essential evidence to determine damages is on the paper record, an evidentiary hearing on damages is not required. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

### III.   ANALYSIS

#### A. Liability Under the Federal Maritime Lien Act

The Federal Maritime Lien Act, 46 U.S.C. § 31341, *et seq.*, grants a maritime lien to a party that provides necessaries to a vessel. *Robbie's of Key W. v. M/V Komedy III*, 470 F. Supp. 3d 1264 (S.D. Fla. 2020) (citing 46 U.S.C. § 31342). "A maritime lien is a 'special property right in a ship given to creditor by law as security for a debt or claim subsisting from the moment the debt arises.'" *Beyel Bros., Inc. v. M/V Monarch Princess*, No. 23-14121-CIV-CAN, 2023 U.S. Dist. LEXIS 187274, at *6 (S.D. Fla. Oct. 16, 2023) (quoting *Dresdner Bank AG v. M/V Olympia Voyager*, 465 F.3d 1267 (11th Cir. 2006)). "[A] maritime lien is not simply a security device to be

4

foreclosed if the owner defaults; rather, a maritime lien converts the vessel itself into the obligor and allows injured parties to proceed against it directly." *Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 868 (11th Cir. 2010) (internal quotations omitted).

The Eleventh Circuit has set forth a four-part test to establish a maritime lien. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005). "To establish a maritime lien on a vessel pursuant to 46 U.S.C. § 31342 in an *in rem* action, a plaintiff must prove: (1) it provided 'necessaries' (2) at a reasonable price (3) to the vessel (4) at the direction of the vessel's owner or agent." *Sweet Pea Marine, Ltd.*, 411 F.3d at 1249. The term "necessaries" is given a broad meaning. *Shm Regatta Pointe, LLC v. M/Y Alley Cat*, No. 8:21-cv-1854-KKM-AEP, 2022 WL 1571904, at *2 (M.D. Fla. Apr. 29, 2022) (citing *Bradford Marine, Inc. v. M/V Sea Falcon*, 64 F.3d 585, 589 (11th Cir. 1995) (noting that the term "necessaries" has been liberally construed to include "what is reasonably needed in the ship's business")). By statute, "necessaries" include "repairs, supplies, towage, and the use of a dry dock or marine railway." *Id.* (citing 46 U.S.C. § 31301(4)).

The well-pled allegations contained in the Plaintiff's Complaint satisfy each of the four elements set forth in the four-part test. First, the Plaintiff provided "dockage, utilities, and boat handling services," all of which qualify as, and which the Vessel owner stipulated are, "necessaries" under the applicable definition and related authorities. ECF No. 17 at ¶¶ 16-17; 46 U.S.C. § 31301(4). Second, the Plaintiff's Complaint and the sworn declaration of Lazaro Roig establish that the necessaries were provided at a reasonable price. The Vessel owner's agreement to the rates in the Agreement, without any objection, further satisfactorily establishes that services were provided at a reasonable price. ECF No. 17 at ¶ 16; ECF No. 21-2 at ¶ 3; *Rickenbacker Marina, Inc. v. Sancocho*, No. 1:22-cv-20788-JEM/Becerra, 2023 WL 6279058, at *5 (S.D. Fla.

5

July 17, 2023), *report and recommendation adopted*, 2023 WL 6255011 (S.D. Fla. Sept. 26, 2023); *Robbie's of Key W.*, 470 F. Supp. 3d at 1268-69 (S.D. Fla. 2020) ("[T]he necessaries appear to be a reasonable price as the representative of the Defendant Vessel agreed to the storage price in the contract."). Third, Plaintiff's Complaint establishes that the above-mentioned necessaries were provided to a vessel, the M/Y *Triumphant Lady*, a 1984 model 46.97-meter motor yacht. ECF No. 17 at ¶¶ 11, 16; 1 U.S.C. § 3 ("The word 'vessel' includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water."). Fourth, the Plaintiff established that the necessaries were provided to the Defendant Vessel at the direction of the owner. ECF No. 17 at ¶ 15 (stating that "the Vessel Owner authorized [his representative] to procure necessaries for the Vessel"); *see also* ECF No. 17-1.

Because the allegations contained in the Plaintiff's well-pleaded Complaint satisfy the legal requirements for establishing a maritime lien, the Plaintiff is entitled to final default judgment with respect to liability.

### B. Damages

Plaintiff seeks reimbursement for $42,115.78 for necessaries provided up to September 6, 2023; *custodia legis* fees for the period of September 7, 2023, through February 1, 2024, in an amount of $253,859.73; ongoing *custodia legis* fees from the period of February 2, 2024, to the date of sale of the Vessel at a daily rate of $1,172.14; and pre-judgment interest. ECF No. 21 at 13 ¶ 1; *Campbell v. Bennett*, 47 F.4th 1362, 1370 (11th Cir. 2022) ("Under Federal Rule of Civil Procedure 54(c) "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

      i.      <u>Reimbursement for Necessaries Provided to the Vessel</u>

Plaintiff seeks to recover $42,115.78 in unpaid fees for necessaries provided to the Vessel from October 2022 to September 6, 2023—the day before the Vessel was arrested. ECF No. 17 at ¶¶ 22-23. Plaintiff's requested relief is supported by the declaration of Lazaro Roig and attached financial statements and invoices from Lauderdale Marine Center listing the unpaid charges for necessaries provided to the Vessel until its arrest on September 7, 2023 and the *custodia legis* fees following the Vessel's arrest. ECF No. 21-2 at 1-7. One of the attached statements indicates a remaining balance of $42,115.78 for the necessaries provided through September 6, 2024. ECF No. 21-2 at 7. This is consistent with the Plaintiff's representation that the Vessel's owner made a partial payment of $367,386.85 from the total prior balance of $409,502.63 for necessaries provided to the Vessel. ECF No. 21-2 at ¶ 6. Therefore, the undersigned finds that these exhibits constitute credible and sufficient evidence to establish damages for necessaries in the amount of $42,115.78.

      ii.      <u>*Custodia Legis* Fees</u>

Next, the Plaintiff seeks to recover $253,859.73 in unpaid *custodia legis* fees for the period from September 7, 2023, through February 1, 2024, and ongoing *custodia legis* fees at a daily rate of $1,172.14 for the period from February 2, 2024, until the date of the sale of the Vessel. ECF No. 21 at 13 ¶ 1. "The Eleventh Circuit has recognized that *custodia legis* fees are recoverable as 'expenses of justice' to be reimbursed from the proceeds of the sale of an arrested vessel." *Beyel Bros., Inc.*, 2023 U.S. Dist. LEXIS 187274, at *10 (citing *Donald D. Forsht Assocs., Inc. v. Transamerica ICS, Inc.*, 821 F.2d 1556, 1561 (11th Cir. 1987)). "Courts in this District regularly permit recovery of custodial expenses provided to a ship after its arrest." *Id.* (collecting cases). "*Custodia legis* expenses may be reimbursed from the proceeds of the sale of an arrested vessel

7

and are generally entitled to priority payment over other lien claims."[2] *Id.* (citing *Donald D. Forsht Assocs., Inc.*, 821 F.2d at 1561).

In his declaration supporting the Plaintiff's Motion for Default Final Judgment, Ms. Lazaro Roig states that the *custodia legis* fees for services the Plaintiff provided to the Vessel from September 7, 2023, to February 1, 2024, amounted to $253,859.73. ECF No. 21-2 at ¶ 8. The statement and sixteen invoices attached as an exhibit to Mr. Roig's declaration support this figure. *Id.* at 6-23. Mr. Roig also asserts that from February 1, 2024, until the date of the sale of the Vessel, the Plaintiff will continue to provide custodial services to the Vessel at a daily rate of $1,172.14. *Id.* at ¶ 9. This is consistent with the invoiced charges for similar custodial services provided to the Vessel in earlier months. As a result, the undersigned finds that the Plaintiff has provided sufficient evidence to support the Plaintiff's requested award of *custodia legis* fees.

    iii.    <u>Pre-Judgment Interest</u>

Plaintiff also seeks to recover pre-judgment interest, which was provided for in the Agreement between the Plaintiff and the Vessel's owner, "at the statutory rate under 28 U.S.C. § 1961." ECF No. 21 at ¶ 36; ECF No. 17-1 at ¶ 27. "The general rule in admiralty law is that prejudgment interest should be awarded unless there is an exceptional circumstance dictating otherwise." *Robbie's of Key W.*, 470 F. Supp. 3d at 1270 (citing *City of Milwaukee v. Cement Div., Nat Gypsum Co.*, 505 U.S. 189, 193-194 (1995)). The undersigned finds the requested rate of pre-judgment interest to be appropriate in this case. *IBT Int'l, Inc. v. N. (In re Int'l Admin. Servs.)*, 408 F.3d 689, 710 (11th Cir. 2005) ("In the absence of a controlling statute, the choice of a rate at which to set the amount of prejudgment interest is [] within the discretion of a federal court."); *Robbie's*

---

[2] Plaintiff asserts that there is no recorded mortgage on the Vessel, and the Plaintiff is the only entity that has appeared in this action to foreclose a lien against the Vessel. ECF No. 21 at ¶ 5.

*of Key W.*, 470 F. Supp. 3d at 1270 ("The Court finds that the appropriate interest rate to compensate Plaintiff . . . is the same rate that applies to post-judgment interest according to 28 U.S.C. § 1961" although contract provided for 18% annual rate).

The financial statements from Lauderdale Marine Center establish that the partial payment made by the Vessel's owner on October 23, 2023, satisfied only those unpaid charges incurred prior to August 1, 2023; the Vessel owner's partial payment was not sufficient to cover the entire balance and make the account current. *See* ECF No. 21-2 at 7. Thus, the unpaid necessaries date back to August 1, 2023. Pre-judgment interest should accordingly be awarded at the average weekly rate under 28 U.S.C. § 1961 from August 1, 2023, until the date of the sale of the Vessel, which is when the Plaintiff will stop providing custodial services to the Vessel.

    iv.    <u>Costs</u>

Plaintiff additionally requests costs consisting of a $402.00 filing fee and a $3,500 deposit to the U.S. Marshal to cover the Marshal's expenses incurred during this lawsuit. *See* ECF No. 21 at ¶¶ 14-15; ECF No. 21-1 at ¶¶10-11. With respect to taxable costs, pursuant to Federal Rule of Civil Procedure 54(d)(1), a prevailing party is entitled to recover costs as a matter of course unless directed otherwise by a court of statute. Fed. R. Civ. P. 54(d)(1). Here, assuming this Report and Recommendation is adopted, the Plaintiff will be the prevailing party in this action against the Defendant Vessel, and it will accordingly be entitled to costs. *See, e.g.*, *Rickenbacker Marina, Inc.* 2023 WL 6279058, at *5.

Under 28 U.S.C. § 1920, which "defines the term costs as used in Rule 54(d) and enumerates expenses that a federal court may tax as costs under the discretionary authority found in Rule 54(d)," *Naval Logistic, Inc. v. M/B Vamonos*, 22-CV-22540-JEM, 2024 WL 662344, at *5 (S.D. Fla. Feb. 7, 2024) (quoting *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 437

9

(1987)), *report and recommendation adopted*, 2024 WL 664535 (S.D. Fla. Feb. 16, 2024), "[f]ees of the clerk and marshal" may be awarded under § 1920. 28 U.S.C. § 1920(1).

The $402.00 filing fee "clearly falls within the scope of Section 1920(1)," and as such should be awarded to the Plaintiff. *Naval Logistic, Inc.*, 2024 WL 662344 at *5 (awarding $402.00 filing fee) (quotation omitted); *see also Pelc v. Nowak*, 596 F. App'x 768, 771 (11th Cir. 2015) (affirming District Court's award of filing fees under § 1920).

Certain enumerated fees of the Marshal may be collected and taxed as costs under § 1921. 28 U.S.C. § 1921. Section 1921 allows the marshal to "collect, in advance, a deposit to cover the initial expenses for special services," such as those arising from the arrest of a vessel. 28 U.S.C. § 1921(a)(2). However, "[w]here a party has deposited money with the marshal to cover the marshal's expenses but the marshal has not spent the entire deposit at the time of the judgment, courts addressing the issue have limited recovery to actual fees incurred." *Fincantieri Marine Repair LLC v. Geysir*, 3:22-CV-410-TJC-PDB, 2023 WL 2217272, at *12 n.23 (M.D. Fla. Feb. 4, 2023) (denying recovery of unspent deposit to the marshal and collecting cases), *report and recommendation adopted as modified*, 2023 WL 2213505 (M.D. Fla. Feb. 24, 2023). And, "a Plaintiff may not recover the face value of a deposit with the U.S. Marshal, where [the] Plaintiff has included no evidence of any actual Marshal fees incurred." *M&M Private Lending Group, LLC v. M/Y Ciao Bella*, 19-CV-62350, 2020 WL 5499102, at *4 (S.D. Fla. Sept. 3, 2020), *report and recommendation adopted*, 19-62350-CIV, 2020 WL 5500734 (S.D. Fla. Sept. 11, 2020). The Plaintiff here has not described any actual fees or expenses incurred by the Marshal after the initial $3,500 deposit was made. *See* ECF Nos. 21, 21-2. Thus, the Plaintiff is not entitled an award of costs for the face value of its deposit—collected by the Marshal for the arrest of the M/Y *Triumphant Lady*—because there is no evidence or suggestion that the Marshal spent the deposited

sum and that the Plaintiff will be unable to obtain the return of the deposit. Absent more, the deposit is not recoverable.[3] Accordingly, the Plaintiff should be awarded $402.00 in costs.

      v.      Plaintiff's Request for Sale of the Vessel

Finally, Plaintiff seeks a Court order directing the Marshal to sell the Defendant Vessel and granting the Plaintiff the right to credit bid its default judgment at the sale. ECF No. 21 at 13 ¶ 1-2. "The Supplemental Admiralty Rules apply 'to actions *in personam* with process of maritime attachment and garnishment, actions *in rem*, and petitory, possessory, and partition actions, supplementing Rules B, C, and D.'" *Rickenbacker Marina, Inc.*, 2023 WL 6279058, at *7 (quoting Fed. R. Civ. P. Supp. Admiralty Rule E(1)). The instant action is *in rem* and concerns enforcement of a maritime lien, falling within the scope of the Supplemental Admiralty Rules. *Id.*; *see* ECF No. 17. Supplemental Admiralty Rule E(9) "permits the Court to order that the subject property be sold by the U.S. Marshal, and that the proceeds be 'disposed of according to law.'" *Rickenbacker Marina, Inc.*, 2023 WL 6279058, at *3 (quoting Fed. R. Civ. P. Supp. Admiralty Rule E(9)). Courts in this Circuit routinely permit U.S. Marshal sales of defendant vessels in like circumstances and permit the party enforcing a maritime lien to credit bid its default judgment at the sale. *Id.* (collecting cases); *Beyel Bros., Inc.*, 2023 U.S. Dist. LEXIS 187274, at *12. As such, the undersigned finds that the request for sale of the Vessel and the request to credit bid the Plaintiff's default judgment at the sale should be granted.

### IV.    CONCLUSION

Based on the foregoing, the undersigned **RESPECTFULLY RECOMMENDS** that the Plaintiff's Motion for Default Final Judgment, ECF No. 21, against the Defendant, M/Y

---

[3] Should the Plaintiff file objections to this Report and Recommendation and document that the Marshal has expended the $3,500 deposit (or portion thereof) for fees pursuant to 28 U.S.C. § 1921(a)(1)(E), then the $3,500 amount (or portion thereof) should be awarded to Plaintiff as costs.

*Triumphant Lady*, be **GRANTED IN PART AND DENIED IN PART**, and that the District Court issue an order that:

1. Final default judgment be entered in favor of the Plaintiff and against the Vessel on the Plaintiff's claim to foreclose a maritime lien;

2. The Plaintiff be awarded damages against the Defendant Vessel in the amounts of $42,115.78 in unpaid necessaries; $253,859.73 for *custodia legis* fees for the period between September 7, 2023, until February 1, 2024; ongoing *custodia legis* fees at a daily rate of $1,172.14 for the period beginning on February 2, 2024, until the date of the sale of the Vessel; $402.00 for costs; and pre-judgment interest at the average weekly rate under 28 U.S.C. § 1961 from August 1, 2023, until the date of the sale of the Vessel;

3. The U.S. Marshal be directed to sell the Defendant Vessel, M/Y *Triumphant Lady*, including her engines, tackle, furniture, furnishings, personal watercraft, tenders, and appurtenances, at public auction—free and clear of all liens and encumbrances—at the first available time and date, in accordance with Supplemental Rule E of the Supplemental Admiralty Rules; and

4. Plaintiff be permitted to credit bid its final judgment at the sale of the defendant Vessel.

Within five (5) days from the date of this Report and Recommendation, that is, by **Monday, September 9, 2024**, the parties shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robert N. Scola, United States District Judge. Failing to file timely objections will bar a *de novo* determination by the District Judge of any issue addressed in the Report and Recommendation, will constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," and will

only allow appellate review of the district court order "for plain error if necessary in the interests of justice." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 146-47 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); *see also Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY RECOMMENDED** in Chambers in Miami, Florida, this 4th day of September 2024.

_____
EDUARDO I. SANCHEZ
UNITED STATES MAGISTRATE JUDGE

cc:   Hon. Robert N. Scola
      Counsel of Record